UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

| | | |
|---|---|---|
| DANIEL P. JONES, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:08-cv-529 |
| | ) | |
| v. | ) | Honorable Paul L. Maloney |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |
| | ) | |

This is a social security action brought under 42 U.S.C. § 405(g), seeking review of a final decision of the Commissioner of Social Security finding that plaintiff was not entitled to disability insurance benefits (DIB). On January 9, 2004, plaintiff filed his application for DIB benefits, claiming an October 27, 1999 onset of disability. (A.R. 59-61). Plaintiff's disability insured status expired on December 31, 2004. (A.R. 70). Thus, it was plaintiff's burden to submit evidence demonstrating that he was disabled on or before December 31, 2004. *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990). Plaintiff's claim was denied on initial review. (A.R. 27-33). On May 5, 2006, plaintiff received a hearing before an administrative law judge (ALJ) at which he was represented by counsel. (A.R. 541-94). On October 10, 2006, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 15-22). On April 25, 2008, the Appeals Council denied review (A.R. 5-8), and the ALJ's decision became the Commissioner's final decision.

On June 5, 2008, plaintiff filed his complaint seeking judicial review of the Commissioner's decision denying his claim for DIB benefits. The three issues raised by plaintiff are as follows:

I.  The ALJ and the Appeals Council committed reversible error by not properly considering the opinions of Plaintiff's treating physicians.

II.  The ALJ erred by not following the vocational expert's answers to accurate hypothetical questions.

III.  The Appeals Council erred by not properly considering updated evidence and by (apparently) losing evidence.

(Statement of Errors, Plf. Brief at 16, docket # 7). Upon review, I find that plaintiff's arguments do not provide a basis for disturbing the Commissioner's decision. I recommend that the Commissioner's decision be affirmed.

## Standard of Review

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any

fact if supported by substantial evidence shall be conclusive . . . ."  42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . .  This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).

### Discussion

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from his alleged onset of disability of October 27, 1999, through December 31, 2004, but not thereafter.  (A.R. 17).  Plaintiff had not engaged in substantial gainful activity since his alleged onset of disability.  (A.R. 17).  The ALJ found that plaintiff had the following severe impairments: "degenerative disc disease of the lumbar spine, inguinal nerve entrapment, and

coronary artery disease." (A.R. 17). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 18). The ALJ found that plaintiff retained the following residual functional capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and carry 40 pounds occasionally, and 25 pounds frequently. He can stand and walk for an aggregate of four hours in an 8-hour day, and sit for six hours in an 8-hour day. He may occasionally push or pull with his right lower extremity. He may not bend, stoop, kneel, or crouch. He may occasionally climb stairs. He may not work in an area with exposure to hazardous conditions. The claimant requires simple routine tasks involving no more than simple, short instructions and simple work-related decisions with few workplace changes (SSR 96-8p).

(A.R. 19). The ALJ determined that plaintiff's subjective complaints were not fully credible. (A.R. 19-20). Plaintiff was unable to perform his past relevant work as an electrician. (A.R. 20). Plaintiff was forty years old as of the date of his alleged onset of disability and forty-five years old as of the date his disability insured status expired. Thus, at all times relevant to his claims, plaintiff was classified as younger individual.[1] (A.R. 20). ALJ found that plaintiff has at least a high school education and is able to communicate in English. (A.R. 20). Plaintiff did not have skills transferable to other jobs within his RFC. The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with his RFC, education, and work experience, the VE testified that there were approximately 8,200 jobs in the State of Michigan that the hypothetical person would be capable of performing. (A.R. 589-91). The ALJ held that this constituted a significant number of jobs. Using Rules 203.29 and 202.21 of the

---

[1]The ALJ correctly classified plaintiff as a younger individual, but he misstated plaintiff's age on page six of his opinion. (A.R. 20). Plaintiff was born on August 20, 1959. (A.R. 59). He was forty years old on October 27, 1999, his alleged onset of disability. He was not "49 years old on the alleged disability onset date . . . ." (A.R. 20). This mathematical error has been disregarded. The ALJ's error was harmless because, if anything, it worked to plaintiff's advantage by indicating that he was nine years older than he actually was.

Medical-Vocational Guidelines as a framework, the ALJ found that plaintiff was not disabled. (A.R. 15-22).

## 1.

Plaintiff argues that the Appeals Council erred "by not properly considering the opinions of Plaintiff's treating physicians" and "by not properly considering evidence and by (apparently) losing evidence." (Plf. Brief at 16-19; Reply Brief at 1-3, docket # 9). Plaintiff's challenge to the decision of the Appeals Council is beyond this court's authority. The Appeals Council denied review. (A.R. 5). The scope of this court's review is defined by statute, and does not encompass the Appeals Council's discretionary decision whether to grant review. *See Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001) ("No statutory authority (the source of the district court's review) authorizes the court to review the Appeals Council's decision to deny review."). The ALJ's October 10, 2006 decision finding that plaintiff was not disabled from his alleged onset of disability of October 27, 1999 through December 31, 2004, plaintiff's date last disability insured, is the Commissioner's final decision currently before this court for review.

For more than fifteen years it has been the clearly established law of the Sixth Circuit that the ALJ's decision is the final decision subject to review by this court in cases where the Appeals Council denies review. Plaintiff invites the court to commit error by considering evidence that was not before the ALJ in determining whether the ALJ's decision is supported by substantial evidence. (Plf. Brief at 13, 16-19; Reply Brief at 1-3). This court must base its review of the ALJ's decision upon the administrative record presented to the ALJ. The Sixth Circuit has repeatedly held that where, as here, the Appeals Council denies review and the ALJ's decision becomes the

Commissioner's decision, the court's review is limited to the evidence presented to the ALJ. *See Jones v. Commissioner*, 336 F.3d at 478; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). The court is not authorized to consider additions to the record in determining whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner correctly applied the law. *See Cline v. Commissioner*, 96 F.3d 146, 148 (6th Cir. 1996).

The last sentence of plaintiff's brief contains a passing request for alternative relief in the form of remand to the Commissioner "pursuant to either Sentence Four or Sentence Six of 42 U.S.C. § 405(g)." (Plf. Brief at 20). An identical request appears at the end of plaintiff's reply brief. (Reply Brief at 4). "A district court's authority to remand a case for further administrative proceedings is found in 42 U.S.C. § 405(g)." *Hollon v. Commissioner*, 447 F.3d 477, 482-83 (6th Cir. 2006). The statute permits only two types of remand: a sentence four (post-judgment) remand made in connection with a judgment affirming, modifying, or reversing the Commissioner's decision; and a sentence six (pre-judgment) remand where the court makes no substantive ruling as to the correctness of the Commissioner's decision. *Hollon*, 447 F.3d at 486 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991)); *see Allen v. Commissioner*, 561 F.3d 646, 653-54 (6th Cir. 2009). The court cannot consider evidence that was not submitted to the ALJ in the sentence four context. It only can consider such evidence in determining whether a sentence six remand is appropriate. *See Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007); *Foster v. Halter*, 279 F.3d at 357.

Plaintiff has the burden under sentence six of 42 U.S.C. § 405(g) of demonstrating that the evidence plaintiff now presents in support of a remand is "new" and "material," and that there is "good cause" for the failure to present this evidence in the prior proceeding. *See Hollon*, 447 F.3d at 483; *see also Longworth v. Commissioner*, 402 F.3d 591, 598 (6th Cir. 2005). Courts "are not free to dispense with these statutory requirements." *Hollon*, 447 F.3d at 486. The February 12, 2008 "Medical Assessment of Ability to do Work Related Activities (Physical)" completed by Donald Schanz, D.O. (A.R. 538-40) and an undated letter from Dr. Schanz (Attachment to Plf. Brief) are new because they were generated long after the ALJ's October 10, 2006 decision. *See Hollon*, 447 F.3d at 483-84; *Foster*, 279 F.3d at 357; *see also Templeton v. Commissioner*, 215 F. App'x 458, 463 (6th Cir. 2007). The June 12, 2006 letter from Andrew J. Head, M.D. (Attachment to Plf. Brief) is not new because it is dated months before the ALJ's decision.

"Good cause" is not established solely because the new evidence was not generated until after the ALJ's decision. The Sixth Circuit has taken a "harder line." *Oliver v. Secretary of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986); *see also Perkins v. Apfel*, 14 F. App'x 593, 598-99 (6th Cir. 2001). The moving party must explain why the evidence was not obtained earlier and submitted to the ALJ before the ALJ's decision. *See Hollon*, 447 F.3d at 485; *Oliver*, 804 F.2d at 966; *see also Brace v. Commissioner*, 97 F. App'x 589, 592 (6th Cir. 2004) (claimant's decision to wait and schedule tests just before the hearing before the ALJ did not establish good cause). Plaintiff's statement that, "Dr. Head's record apparently did not become either known or available until after the hearing" (Plf. Brief at 17) does not suffice. Plaintiff offers no evidence regarding any effort made to obtain Dr. Head's June 12, 2006 letter, and no concrete explanation why it was not submitted to the ALJ before he rendered his decision.

With regard to Dr. Schanz, plaintiff concedes that he did not request the proffered documents until "2007, [at] some time after the hearing." (Plf. Brief at 17). Plaintiff alludes to Dr. Schanz "apparently being involved in an automobile accident." (*Id.*). His reply brief states, "[A]s Plaintiff's Brief earlier noted, Dr. Schanz was unavailable at the time of the hearing, apparently due to a serious health condition ([A.R.] 578). The information in question was requested after he had returned to his practice. Under those circumstances, then, the doctor certainly was not available at the time of the hearing." (Reply Brief at 2). The portion of plaintiff's testimony cited in his reply brief (A.R. 578) does not establish that Dr. Schanz was unavailable at the time of plaintiff's hearing. Plaintiff testified, "I'm going to a doctor, I think his name's Janasia [phonetic] [who] is filling in for Dr. Schanz and I'm, the only treatment is Methadone." (A.R. 578). There is a gap of approximately one year in Dr. Schanz's treatment notes from January 7, 2005 (A.R. 502-03) to December 6, 2005 (A.R. 488-89). Dr. Schanz's December 6, 2005 progress notes state, "Daniel Jones represents for a follow-up. I have not seen him for several months. He has been seeing Dr. Probes primarily because I was off for brain aneurysm surgery and recovery." (A.R. 488). This document indicates that plaintiff had a minimum of six months before his May 5, 2006 hearing within which to secure any necessary records from Dr. Schanz. Dr. Schanz's progress notes for February 7, 2006 (A.R. 486) do not reflect any request having been made to have copies of plaintiff's medical records forwarded to his attorney in advance of the May 5, 2006 hearing. Plaintiff's attorney never requested an adjournment of the hearing, nor did he make a request that the ALJ keep the record open to provide him with more time to obtain and submit additional records from Dr. Schanz. (A.R. 541-94). There is no evidence of any effort by plaintiff to secure these documents at any time before the ALJ entered

his October 10, 2006 decision. I find that plaintiff has not carried his burden of demonstrating good cause.

Finally, in order to establish materiality, plaintiff must show that the introduction of the evidence would have reasonably persuaded the Commissioner to reach a different conclusion. *See Foster v. Halter*, 279 F.3d at 357; *Sizemore v. Secretary of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988); *see also Hensley v. Commissioner*, 214 F. App'x 547, 550 (6th Cir. 2007). Plaintiff's brief offers two conclusory sentences on the materiality issue:

> And the new records clearly demonstrate that Plaintiff had not been able to perform full-time work since 1999, well before his insured status expired in 2004. Obviously, this case should be reversed because the evidence clearly demonstrates that the claimant has been unable to return to work.

(Plf. Brief at 17).

The proffered documents are not material. The documents do not reflect the results of any objective tests, much less test results assessing plaintiff's condition on or before December 31, 2004. The undated letter from Dr. Schanz sent to plaintiff's attorney on or about March 7, 2008, states that the letter was drafted in support of plaintiff's claim for DIB benefits. Dr. Schanz wrote that as of some unspecified examination date, that "[plaintiff's] vitals are stable and overall he is doing well, but I do support his disability and do not see him able to rejoin the workforce in any significant manner." (Plf. Brief, Attachment). Further, the RFC assessment Dr. Schanz completed on February 12, 2008, offers extreme restrictions, such as limiting plaintiff to 20 minutes of walking in an eight-hour workday, and asserts that such restrictions have been in effect since 1999. (A.R. 538-40). Dr. Schanz's December 13, 2004 progress notes (A.R. 504-05), the last medical records from Dr. Schanz dated before the expiration of plaintiff's disability insured status, undermine the

newly proffered restrictions. The December 2004 progress notes document that plaintiff had achieved significant pain relief from nerve blocks:

> Daniel presents for a follow-up visit. He has undergone two right ilioinguinal and two right-sided genitofemoral nerve blocks. He relates significant improvement following the two procedures. In his words[,] "I am significantly improved." He states he can tell how much pain relief he has gotten [sic] because his nerve block is gradually starting to wear off and his pain is starting to return. Today he states that the two blocks have reduced his total pain between 60% and 80%. He relates his pain as 2 to 3 on a 1 to 12 scale and states that he is using less pain medication because of his improved analgesia.

(A.R. 504-05). A claimant's RFC, credibility, and whether the claimant is disabled are issues reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(e); *see also Deaton v. Commissioner*, 315 F. App'x 595, 598 (6th Cir. 2009); *Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). The documents from Dr. Schanz would not have reasonably persuaded the Commissioner to reach a different conclusion on the issue of whether plaintiff was disabled on or before December 31, 2004. I reach the same conclusion with regard to Dr. Head's June 12, 2006 letter. This letter addressed plaintiff's medical condition on June 9, 2006, long after plaintiff's disability insured status had expired.

Plaintiff has not demonstrated that remand pursuant to sentence six of 42 U.S.C. § 405(g) is warranted. I recommend that plaintiff's requests for a sentence six remand be denied. Plaintiff's arguments will be evaluated on the record presented to the ALJ.

**2.**

Plaintiff argues that the ALJ failed to give adequate weight to the opinions of his treating physicians, Doctors Probes and Schanz, and that the ALJ failed to comply with the

procedural requirement of giving "good reasons" for rejecting their opinions. (Plf. Brief at 17-18; Reply Brief at 3). Upon review, I find that plaintiff's arguments are meritless.

The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner and a treating physician's opinion that a patient is disabled is not "giv[en] any special significance." 20 C.F.R. § 404.1527(e); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004); *see also Deaton v. Commissioner*, 315 F. App'x 595, 598 (6th Cir. 2009). Likewise, "no special significance" is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirement of a listed impairment because they are administrative issues reserved to the Commissioner. 20 C.F.R. § 404.1527(e); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009); *Deaton*, 315 F. App'x at 598; *Warner*, 375 F.3d at 390.

It is the ALJ's job to resolve conflicting medical evidence. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971); *Mitchell v. Commissioner*, No. 08-6244, 2009 WL 1531879, at * 3 (6th Cir. June 2, 2009); *Martin v. Commissioner*, 170 F. App'x 369, 373 (6th Cir. 2006). Judicial review of the Commissioner's final administrative decision does not encompass resolving such conflicts. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Walters v. Commissioner*, 127 F.3d at 528; *see Price v. Commissioner*, No. 08-4210, 2009 WL 2514079, at * 2 (6th Cir. Aug. 19, 2009). The treatment relationship is one of the factors that the ALJ considers in determining what weight to give a medical opinion. Generally, more weight is given to the medical opinions of treating sources. 20 C.F.R. § 404.1527(d)(2). If the ALJ finds that the treating source's opinion on the issues of the nature and severity of the claimant's impairments is well-supported by medically

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case, the social security regulations specify that the ALJ is to give the medical opinion controlling weight. *Id.*; *see McGrew v. Commissioner*, No. 08-4561, 2009 WL 2514081, at * 3 (6th Cir. Aug. 19, 2009); *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009); *White v. Commissioner*, 572 F.3d 272, 285-86 (6th Cir. 2009). A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see Cox v. Commissioner*, 295 F. App'x 27, 35 (6th Cir. 2008) ("This court generally defers to an ALJ's decision to give more weight to the opinion of one physician than another, where, as here, the ALJ's opinion is supported by evidence that the rejected opinion is inconsistent with the other medical evidence in the record."). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton*, 246 F.3d at 773; *see Kidd v. Commissioner*, 283 F. App'x 336, 340 (6th Cir. 2008). An opinion that is based on the claimant's reporting of her symptoms is not entitled to any particular weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Mitchell v. Commissioner*, 2009 WL 1531879, at * 5-6; *Smith v. Commissioner*, 482 F.3d 873, 876-77 (6th Cir. 2007).

Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the record, the opinion should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other

factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. §§ 404.1527(d), 416.927(d); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006); *see also Anthony v. Astrue*, 266 F. App'x 451, 458-59 (6th Cir. 2008).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d at 875-76; *see Allen v. Commissioner*, 561 F.3d 646, 651 (6th Cir. 2009); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "The procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deem them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876.

Plaintiff's argument that the ALJ failed to give sufficient weight to Dr. Schanz's opinion is premised on records that he never presented to the ALJ (Plf. Brief at 17, 19; Reply Brief at 2-3) and which cannot be considered by the court for the reasons previously stated herein. It was impossible for the ALJ to give weight to evidence that he never received. Plaintiff's argument with regard to Dr. Probes fares no better. Plaintiff has not identified the opinion or opinions expressed by Dr. Probes that the ALJ failed to give sufficient deference. The ALJ carefully addressed Dr. Probes's assessment of plaintiff's condition:

> Lawrence Probes, M.D., a psychiatrist and neurologist, treated the claimant with medication for pain from July 2003 through November 2005. Indeed, the psychiatrist noted that the claimant had not reported any depression or anxiety, but was having difficulty with chronic pain. Reports of an examination by the physician on March 29, 2004, indicated that the claimant had no premorbid psychiatric disorder other than alcohol and nicotine dependence which had been in remission for many years. The psychiatrist rated the claimant's global assessment of functioning (GAF) at 55, considered moderate symptoms or moderate difficulty in social or occupational functioning secondary to the claimant's chronic pain.

-13-

(A.R. 20). The ALJ gave full weight to the findings of Dr. Probes, which do not support plaintiff's case. I find no violation of the treating physician rule and no violation of the procedural rule requiring that the ALJ provide good reasons for the weight given to plaintiff's treating physicians' opinions.

**3.**

Plaintiff argues in his reply brief that the defendant "conceded" two issues related to the ALJ's credibility determination because, according to plaintiff, they were not adequately addressed in defendants' brief: (1) that the ALJ failed to adequately consider plaintiff's work history; and (2) that ALJ applied an improper "sit and squirm" test in making his credibility determination. (Reply Brief at 3). This argument is meritless. Defendant did not "concede" any issue regarding plaintiff's credibility. These issues were never properly before the court in the first place. Plaintiff effectively abandoned these issues by not including them in his statement of errors, as required under the court's August 14, 2008 Order Directing the Filing of Briefs. Further, even if plaintiff had not abandoned these issues, the ALJ carefully considered plaintiff's work history and he did not apply an improper test for determining plaintiff's credibility. I find that the ALJ's credibility determination is supported by more than substantial evidence.

A. <u>Violation of the Court's Order Directing the Filing of Briefs</u>

The court's August 14, 2008 Order Directing the Filing of Briefs states, "Plaintiff's initial brief must contain a Statement of Errors setting forth the specific errors of fact or law upon which plaintiff seeks reversal or remand." (8/14/08 Order, docket # 6). The plaintiff's statement of errors provides the framework for the contested issues which the Commissioner is expected to

-14-

address in his brief and generally the issues that the court will address in its appellate review of the Commissioner's final administrative decision under 42 U.S.C. § 405(g).[2]  The two credibility issues emphasized in the conclusion of plaintiff's reply brief were not among the issues he identified in plaintiff's statement of errors.  (Statement of Errors, Plf. Brief at 16).  Instead, they appear in a single paragraph on page nineteen of plaintiff's brief.  The Commissioner did not "concede[] error" when he declined to address issues that the plaintiff failed to include in his statement of errors.

B.     ALJ's Credibility Determination

Assuming *arguendo* that plaintiff had not abandoned the two credibility issues, I find that plaintiff's arguments are meritless.  The court does not make its own credibility determinations.  *See Walters v. Commissioner*, 127 F.3d at 528; *see McGlothlin v. Commissioner*, 299 F. App'x 516, 523-24 (6th Cir. 2008).  The court cannot substitute its own credibility determination for the ALJ's.  The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ."  *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005).  The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the deferential "substantial evidence" standard.  "Claimants challenging the ALJ's credibility determination face an uphill battle."  *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005).  "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying."

_____

[2] "[I]ssues not adequately developed or argued in the appellate briefs are deemed abandoned." *Brown v. Konteh*, 567 F.3d 191, 212 (6th Cir. 2009); *accord ATC Distrib. Group, Inc. v. Whatever It Takes Transmissions & Parts, Inc.*, 402 F.3d 700, 705 n.1 (6th Cir. 2005) (issues listed without supporting argument are deemed abandoned).

-15-

*Jones*, 336 F.3d at 476. "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d at 773. "Since the ALJ has the opportunity to observe the demeanor of the witness, his conclusions with respect to credibility should not be discarded lightly and should be accorded deference." *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993); *see White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009). I find that the ALJ's credibility determination regarding plaintiff's subjective complaints is supported by more than substantial evidence.

(1)     Work History

Plaintiff makes the following argument regarding plaintiff's work history:

> [T]his Court should consider that before Plaintiff's accident, he had a steady and positive work history, and he made sustained attempts to return to his job after the accident. Moreover, he had an excellent job as an electrician. An ALJ must consider a claimant's work history when assessing credibility, and a good work history strengthens the claimant's credibility. *Schaal v Apfel*, 134 F.3d 496, 502 (2d Cir. 1998).

(Plf. Brief at 19). It is the ALJ's function to determine credibility issues, not the court's. *See Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009). A claimant's work history is only one of the many factors that the ALJ can consider in making his credibility determination. *See* 20 C.F.R. § 404.1529; *see also White v. Commissioner*, 572 F.3d 2727, 287 (6th Cir. 2009). Here, the ALJ considered plaintiff's work history as an electrician. (A.R. 20). It is unclear from plaintiff's brief exactly what "accident" and which "attempts" to return to work form the basis for his argument. Plaintiff's work history was not of such magnitude that it undermined the other substantial evidence supporting the ALJ's credibility determination. The administrative record shows that plaintiff had

a somewhat sporadic work history. He stated that he became a journeyman electrician in 1992. (A.R. 548). He had no earnings and no quarters of coverage for 1989 and 1991, only two quarters of coverage in 1994, and only had sufficient quarters of coverage to remain disability insured until December 31, 2004. (A.R. 63, 71, 75). Plaintiff reported that he worked at three different companies as an electrician from 1992 until early 1995. (A.R. 153). He was self-employed doing business as Jones Electric from January 1995 to February 1996. He worked as an electrician at three other companies between February 1996 and October 1999: Ferman Electric (February 1996 to June 1996); Control Electric (June 1996 to June 1998); and Four Seasons Electric (June 1998 to October 1999). (A.R. 150). Plaintiff testified that he last worked in October of 1999, and that he stopped working when he took a voluntary layoff:

Q      And the last time you worked was when?

A      October 1999.

Q      All right. And that was as an electrician?

A      Yes, sir.

Q      Were you, were, who were you employed by at that time?

A      Four Seasons Electric.

Q      And why did you stop working?

A      I was, at the time I was, I took a voluntary layoff because my pain was becoming such a problem for me.

(A.R. 550-51). I find that plaintiff's "work history" argument does not provide grounds for disturbing the Commissioner's decision.

(2)     Plaintiff's Demeanor

The following argument appears on page 19 of plaintiff's brief:

> [The ALJ] apparently decided the case at least in part on the fact that the Plaintiff apparently showed no discomfort during the hearing EVEN THOUGH HE DID ([A.R.] 592-593).[3] That certainly appears to be an application of an improper "sit and squirm test," which was rejected by the Sixth Circuit in *Martin v. Secretary of H.H.S.*, 735 F2d 1008, 1010 (6th Cir. 1984).

(Plf. Brief at 17).  It is well established that the ALJ cannot rely *solely* upon his observations at the hearing in resolving a claimant's subjective complaints.  *See Weaver v. Secretary of Health & Human Servs.*, 722 F.2d 310, 312 (6th Cir. 1983).  However, it is equally well established that an ALJ "may distrust a claimant's allegations of disabling symptomology if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other." *Moon v. Sullivan*, 923 F.2d 1175, 1183 (6th Cir. 1990); *see Lucido v. Commissioner*, 109 F. App'x 715, 716-17 (6th Cir. 2004);  *Asher v. Secretary of Health & Human Servs.*, 93-5054, 1993 WL 230283, at * 1 (6th Cir. June 25, 1993).

Significant evidence supports the ALJ's findings concerning the absence of disabling symptoms.  Plaintiff's attorney identified plaintiff's pain disorder as the primary thing that prevented plaintiff from working.  (A.R. 551).  Plaintiff's medical history included some significant heart problems, which in 1995, had required a left cardiac catheterization, coronary angiography, left ventriculogram, and a PTCA of his circumflex artery (A.R. 178-81, 559).  In November 1996, plaintiff underwent a right distal aortic, common iliac bypass to the right external iliac artery.  (A.R. 185-86).  Plaintiff testified that after his 1996 surgery he had experienced pain in his abdomen, groin

---

[3]The hearing transcript shows that at the end of the hearing, immediately before plaintiff's attorney asked the VE  two short questions (A.R. 593), he asked his client if he needed to stand up. (A.R. 592).

and right leg that increased and decreased periodically and that it was his biggest problem. (A.R. 554-55). Plaintiff's heart problem had resolved to the point where his attorney indicated that, for the October 27, 1999 through December 31, 2004 period at issue, it was a "minor problem." (A.R. 551). Plaintiff's cardiologist had not advised him to avoid any activities. (A.R. 559). Plaintiff stated that he had low back pain of variable intensity since 1984 which interfered with his ability to work. (A.R. 576-77). Plaintiff's attorney acknowledged that there was little objective evidence supporting plaintiff's lower back pain complaints. The only evidence was plaintiff's September 26, 2003 MRI which showed no disc narrowing or loss of vertebral body height at any level and normal alignment and lordosis with no spondylolysis or spondylolisthesis, and no evidence of focal disc herniation. Other than minor degenerative changes, the MRI returned normal results. (A.R. 241-45, 272-74, 580). Plaintiff had a remote history of alcohol abuse. (A.R. 564-65). He testified that he was not seeing a psychiatrist or mental health worker and that he was not taking any psychiatric medication. (A.R. 552). Plaintiff testified that he was able to fill out the social security forms without difficulty and that he was capable of simple mathematics like adding and subtracting. (A.R. 548). Plaintiff testified that he took two to three naps per day, each lasting between one and three hours. (A.R. 561). Plaintiff testified that when he was not napping during the day he spent his time watching four-to-eight hours of television and talking with his brother on the telephone. (A.R. 584). The ALJ found that plaintiff's testimony claiming that he suffered from disabling symptoms was inconsistent with the objective medical evidence, his daily activities, and his demeanor:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible. The claimant testified that on a good day he could sit for thirty minutes at one time. However, the instant hearing lasted 70 minutes and

the claimant showed no apparent discomfort. He also stated that he required several naps during the day secondary to his sleep disorder. Two different sleep tests performed at two different labs showed that the claimant ground his teeth at night, but did not have a sleep disorder. [A.R. 510-15, 524-32]. The undersigned has found the sleep disorder as not medically determinable, so the claimant's naps are not related to the impairment, while the undersigned notes that the claimant's restricted life-style may be pleasant for the claimant, the medical and other evidence shows no need for such markedly limited activities.

Mr. Jones was diagnosed with mild neuropathic pain syndrome-chronic, and chronic right groin pain with a right and left sacral torsion. The disorder came about as a result of the claimant's arterial bypass surgery in 1996. The physician stated that adhesions had "trapped" the nerve, causing irritation and pain. He underwent physical therapy in November 2001 and told his physician that his pain had improved 50%. He was continuing physical therapy and performing exercises at home. The rehabilitation and physical medicine specialist opined in November 2001 the claimant should be limited to light duty restriction on a permanent basis (Exhibit 7F) [A.R. 222-23]. The claimant was then treated from July 2003 to November 2005 by a specialist in pain. The physician found injections in the area of entrapment were successful in relieving the claimant's pain for some period of time. Indeed, the claimant reported he was able to cut back on the opiate pain medications because the injections were helping (Exhibit 25F) [A.R. 502-05].

The claimant testified that his most limiting impairment was low back pain secondary to degenerative disc disease. Objective testing has shown minimal degenerative disc disease of the lumbosacral spine with no focal herniation, and diffuse bulges at multiple levels without nerve impingement. There were areas of facet arthropathy with disc bulging. (Exhibit 15F) [A.R. 272-74]. The pain specialist opined the claimant had significant facet arthropathy. However, the claimant reported that he noticed back pain only after he had treatment in the form of nerve blocks for entrapment. This treatment reportedly relieve the claimant's pain such that he was able to significantly reduce his intake of opiad pain medication (Exhibit 25F/49) [A.R. 502].

* * *

The claimant has an unusual medical history. However, there are extensive records from various physicians that indicate that treatment does improve the claimant's pain. He has a history of myocardial infarction and arterial bypass surgery. The surgery was successful in treating the claimant's arterial blockage, however, the claimant experienced adhesions and scarring in the surgical area, resulting in nerve entrapment, with the result that the claimant has experienced chronic pain. Although the claimant alleges severely limited activities of daily living, the medical evidence of record continued to report that the claimant was responding to treatment and experiencing pain relief. Indeed, at one point the claimant requested a handicap placard for his car, and was told by his physician that walking would be good for him. The undersigned is aware the claimant has a certain amount of pain on an

-20-

ongoing basis.  However, there is no indication that performing work activity at the light exertional level would increase the claimant's pain.  The undersigned has considered the effects of the claimant's use of opiad pain medication in assessing the claimant's ability to perform simple work activity.

(A.R. 19-20).  I find that the ALJ did not utilize a "sit and squirm" test and that his credibility determination is supported by more than substantial evidence.

### 4.

Plaintiff argues that the ALJ was bound by the VE's response to a hypothetical question which assumed that all plaintiff's subjective complaints were fully credible.  (Plf. Brief at 18).  It is well settled that a hypothetical question to a VE need not include unsubstantiated complaints.  *See Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *see also Anthony v. Astrue*, 266 F. App'x 451, 461 (6th Cir. 2008); *Myatt v. Commissioner*, 251 F. App'x 332, 336 (6th Cir. 2007).  The ALJ found that plaintiff's subjective complaints were not fully credible.  The ALJ was not bound in any way by a VE's response to a hypothetical question incorporating a contrary assumption.

### Recommended Disposition

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed and that his request for a remand to the agency be denied.

Dated:   September 2, 2009          /s/  Joseph G. Scoville                          
                                              United States Magistrate Judge

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All

objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *McClanahan v. Commissioner*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).